[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2012
JOHN LEY
CLERK

No. 10-15041
_____

D. C. Docket No. 0:03-cv-61199-KAM


COMMODITY FUTURES TRADING
COMMISSION,

                                                                Plaintiff-Appellee,


        versus


GIOVANNI FLEURY,
GIOVANNI FLEURY INVESTMENTS, INC.,

                                                        Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 27, 2012)

Before EDMONDSON and MARTIN, Circuit Judges, and FULLER,[*] District
Judge.

_____

[*]Honorable Mark E. Fuller, United States District Judge for the Middle District of Alabama,
sitting by designation.

PER CURIAM:

This appeal involves the Commodity Exchange Act ("CEA"), which gives Plaintiff, the United States Commodity Futures Trading Commission ("CFTC"), jurisdiction over transactions involving contracts that are commonly known as "futures contracts."  See 7 U.S.C. § 2(a)(1)(A).  Defendants Giovanni Fleury and his company Giovanni Fleury Investments, Inc. ("GFI") appeal from the district court's decision that they violated the CEA by fraudulently soliciting the public to invest in foreign currency futures contracts; Plaintiff cross-appeals the amount of the penalty the district court imposed.  Defendants stipulated to facts that foreclose their arguments on appeal, and the district court's penalty was no abuse of discretion; we affirm.

I.

Defendants created and operated a website through which they solicited money from the general public by claiming, among other things, that they had a

special and especially successful strategy for trading foreign currency. Defendants claimed the strategy would give their customers an exceptional return on their investments. Many of the claims on Defendants' website were false; Defendants' investing was not successful; and Defendants returned to their customers about $722,000 of the $3.9 million those customers invested. In 2003, Plaintiff CFTC filed a civil action in district court; the civil action charged Defendants with fraudulently soliciting customers to invest in funds that traded in foreign currency futures contracts.

After a bench trial, the district court decided that the CFTC had jurisdiction over Defendants' trading activity because Defendants were investing their customers' money in currency futures contracts. The court decided that Defendants made knowing material misrepresentations in connection with those futures contracts.[1] The court permanently enjoined Defendants, ordered them to pay restitution of $310,025.22 (the amount of the customers' money that Fleury diverted to his personal bank account), and imposed a civil penalty of $120,000.

---

[1]For district court decisions following a bench trial, we review the district court's conclusions of law de novo; and we review the court's findings of fact for clear error. Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1319-20 (11th Cir. 2011).

II.

On appeal the parties argue most about how to characterize the kind of investing with which Defendants were involved. Plaintiff argues that we should characterize Defendants' transactions as foreign currency futures contracts, that Plaintiff has regulatory jurisdiction over those trades, and that Plaintiff can therefore initiate actions against Defendants for, among other things, misrepresentations in soliciting customers.[2] Defendants argue that Plaintiff has no jurisdiction over their acts because they traded no foreign currency futures under CEA Section 2(a)(1)(A), but, instead, traded the physical foreign currency itself through "spot" transactions.

The CFTC has regulatory jurisdiction over futures contracts, which the CEA calls "transactions involving . . . contracts of sale of a commodity for future delivery." 7 U.S.C. § 2(a)(1)(A).[3] The CEA expressly excludes sales "of any cash

---

[2]Pursuant to 7 U.S.C. Section 13a-1, the CFTC may bring an action in federal court to enjoin or restrain violations of the CEA, and may seek civil penalties and equitable remedies for those violations.

[3]Before 2000, the CFTC had no jurisdiction over transactions in foreign currency traded outside of an organized futures exchange. In 2000, Congress however, enacted the Commodity Futures Modernization Act amendments to the CEA. The CEA now gives the CFTC jurisdiction over certain foreign exchange transactions, including those involving futures contracts. Id. at § 2(c)(2)(B)(i). The CFTC has no jurisdiction over a contract of sale for foreign currency that

4

commodity for deferred shipment or delivery" from the term "future delivery," and therefore excludes those sales, commonly referred to as a "forward contracts," from CFTC regulation. Id. at § 1a(27). So, Plaintiff's ability to pursue claims that Defendants have deceitfully marketed investments in foreign currency depends on whether the transactions were futures contracts.

The CEA neither defines nor distinguishes between futures contracts, forward contracts, and -- what Defendants argue they dealt in -- spot contracts. Plaintiff claims the correct way to distinguish between futures contracts and other transactions is by applying a "totality of the circumstances" multi-factor test, which was established in CFTC v. Co Petro Mktg. Grp., Inc., 680 F.2d 573 (9th Cir. 1982). Defendants argue the correct test is a "standardization and fungibility test" established in CFTC v. Zelener, 373 F.3d 861 (7th Cir. 2004). To decide whether the CFTC has jurisdiction over Defendants' trading activity, we need not decide what test applies. In this case, the parties jointly stipulated to the facts that point to today's conclusion: under all the contended-for tests, Defendants traded in foreign currency futures contracts.[4]

---

"results in actual delivery within 2 days" or that "creates an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery." Id. at § 2(c)(2)(C)(i)(II).

[4]We do not decide whether we ought to defer to the CFTC's interpretation of its jurisdiction to regulate futures contracts. The question is not necessary.

To decide whether the CFTC has jurisdiction over transactions as futures contracts under the CEA, courts applying the Co Petro multi-factor test look at things like (1) whether the commodity underlying the transactions has inherent value to the defendant's customers; (2) whether the defendant's customers have the intention or capacity actually to receive the commodities being traded; (3) whether the contracts for the commodities are standardized and easily transferrable; and (4) whether, instead of waiting for the commodities to be delivered, the traders replace or "offset" the difference between the market price paid for the commodity and the current market price by buying a new commodities contract or by taking cash. See, e.g., CFTC v. Erskine, 512 F.3d 309, 316-18 (6th Cir. 2008) (describing a line of cases that applied the Co Petro multi-factor test urged by the CFTC).

Defendants traded in foreign currency futures contracts because (1) Defendants' "customers entered into transaction[s] with Defendants to speculate in foreign currency" (Stip. ¶ 48) and not to buy physical currency; (2) Defendants' website specified that "the foreign currency transactions . . . are not for delivery," (Stip. ¶ 50), the customers could receive no physical currency because they had no access to the account through which Defendants traded, (Stip. ¶¶ 42-44, 46-47), Defendants had no "capacity or intent to make or take delivery," (Stip. ¶ 52), and

6

"delivery [of the foreign currency] never occurred" (Stip. ¶ 51); (3) the foreign currency positions were "standardized, non-deliverable, leveraged units" traded with a Futures Commission Merchant ("FCM") (Stip. ¶ 65); and (4) "customer's positions were all closed through an offset transaction" (Stip. ¶ 52), and Defendants "offset [the foreign currency positions] with matching opposite transactions," (Stip. ¶ 65).[5] Our application of the multi-factor analysis applied by some courts shows that the CFTC has jurisdiction to prosecute actions against these defendants for trading in foreign currency futures contracts.

And our application of the Zelener analysis applied by other courts confirms that the CFTC has jurisdiction to prosecute actions against Defendants for trading in foreign currency futures contracts. Zelener and the courts that follow its analysis stress that -- when trading in commodities futures -- "trade is 'in the contract'" as opposed to the actual commodity, contract terms are standardized, the contracts are fungible, and it is "possible to close a position by buying an offsetting contract." See, e.g., Zelener, 373 F.3d at 865-66. Defendants stipulated

---

[5]Defendants argue that Fleury's testimony at trial clarified and materially changes the meaning of the words Defendants stipulated to before trial. But the district court heard Fleury's testimony and changed no pertinent words from the joint stipulation when making findings of fact. After reviewing Fleury's testimony we have no "definite and firm conviction" that the district court's findings were mistaken. See United States v. U.S. Gypsum Co., 68 S. Ct. 525, 542 (1948).

7

to facts that establish they traded in futures contracts under the Zelener analysis: they traded in contracts in an organized "trading facility that allowed GFI to buy and sell standardized foreign currency positions" as fungible "units" (Stip. ¶ 65), and the foreign currency positions were closed through offset transactions.

The CFTC has regulatory jurisdiction over Defendants' transactions because they traded in "contracts of sale of a commodity for future delivery," 7 U.S.C. § 2(a)(1)(A). The district court did not err in coming to this conclusion.

III.

In a cross-appeal, the CFTC urges us to reverse the district court's civil penalty of $120,000 as too low, arguing that Defendants violated the CEA for a significant time and defrauded many customers. The district court has jurisdiction to exact a civil penalty of $120,000 for each violation of the CEA. 7 U.S.C. § 13a-1(d); 17 C.F.R. § 143.8(a)(1)(ii). The district court's imposition of the civil penalty must be "rationally related to the offense charged or the need for deterrence." CFTC v. Levy, 541 F.3d 1102, 1112 (11th Cir. 2008).

The district court here concluded that Defendants' scheme to defraud many customers warranted a $120,000 penalty, which the court decided was rationally related to Defendants' offenses and to the need to deter future violations. The district court did not abuse its discretion in imposing this penalty because we see no indication in the record or in the court's orders that the court "'fail[ed] to apply the proper legal standard or to follow proper procedures in making the determination, or base[d the] award upon findings of fact that are clearly erroneous.'" CFTC v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1343 (11th Cir. 2008) (quoting Hatcher v. Miller (In re Red Carpet Corp.), 902 F.2d 883, 890 (11th Cir. 1990)).

IV.

We affirm the district court's decision that the CFTC had jurisdiction over Defendants' trading activity because Defendants were trading in foreign currency futures contracts. In addition, we affirm the district court's imposition of a $120,000 civil penalty for Defendants' violation of the CEA.

AFFIRMED.

9