[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13937
_____

D.C. Docket No. 0:15-cv-62344-DPG


DIRECT NICHE, LLC,
a Minnesota limited liability company,

Plaintiff - Appellant,

versus

VIA VAREJO S/A,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 3, 2018)

Before MARCUS and WILSON, Circuit Judges, and HOWARD,[*] District Judge.

HOWARD, District Judge:

Appellant Direct Niche, LLC initiated this case against Appellee Via Varejo S/A under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1114(2)(D)(v), seeking to obtain a declaratory judgment that its registration and use of the domain name *casasbahia.com* is not unlawful under the ACPA. Via Varejo maintained that Direct Niche is not entitled to the requested relief because Direct Niche registered the *casasbahia.com* domain with a bad faith intent to profit from Via Varejo's common law service mark, Casas Bahia. After a four-day bench trial, the United States District Court for the Southern District of Florida agreed with Via Varejo and entered judgment accordingly. On appeal, Direct Niche challenges only the district court's finding that Via Varejo has used the Casas Bahia mark in commerce in a manner sufficient to establish ownership rights. After careful review of the record and briefs of the parties, and with the benefit of oral argument, we affirm.

## I.    Background

Via Varejo is a Brazilian corporation with its principal place of business in São Paolo, Brazil. Via Varejo is the parent company of the Casas Bahia chain of retail stores. Casas Bahia is a multi-billion dollar retail brand with around 22,000

---

[*] Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

2

employees and over 750 stores throughout Brazil.  Via Varejo owns a trademark portfolio for its Casas Bahia mark, including about forty trademarks in countries around the world.  At the time of the bench trial, Via Varejo had pending applications for three Casas Bahia service marks in the United States.[1]  Via Varejo uses the Casas Bahia name to sell electronics, furniture, appliances, and other consumer goods.  In addition to brick-and-mortar stores, Via Varejo has utilized the Casas Bahia brand in e-commerce since 2009, operating under the domain name *casasbahia.com.br* (the Casas Bahia Website).  Via Varejo does not operate any physical Casas Bahia stores in the United States and does not ship goods ordered online to the United States, although millions of Internet Protocol (IP) addresses located in the United States access the Casas Bahia Website every year.

In addition to the sale of products to consumers, Via Varejo also generates income from the Casas Bahia Website through the sale of advertising space to third-parties, including U.S. companies.  Via Varejo does this in three ways: (1) preferred product placement, (2) a banner advertising program, and (3) its marketplace seller program.  First, through preferred product placement, Via Varejo provides featured displays of a third-party supplier's products on the Casas Bahia Website in exchange for payment or a discount off the cost of the products

---

[1] Six days after the bench trial, Via Varejo obtained a trademark registration in the United States for the Casas Bahia service mark.  Because the district court gave no consideration to the change in trademark application status in reaching its judgment, we likewise do not consider it.

3

purchased from the supplier.  When a supplier transacts for preferred product placement, its products are displayed on the Casas Bahia Website for an agreed-upon period of time in a more prominent position with distinctive formatting, separate from the regular list of items for sale.  Via Varejo and U.S. companies such as Intel, Microsoft, Black & Decker, Hewlett Packard, and Dell, have directly transacted for preferred product placement on the Casas Bahia Website dating as far back as 2009.

Second, Via Varejo provides third parties, including U.S.-based advertisers, the opportunity to purchase advertising space on the Casas Bahia Website through its banner ad program.  Via Varejo has engaged in the banner ad program since 2013.  Through this program, Via Varejo sells space on the Casas Bahia Website to ad brokers such as Google, and Google populates the space with the banner advertisements of third parties.  The banner ad program allows Via Varejo to monetize the traffic coming to the Casas Bahia Website (as only one in one hundred visitors makes a purchase), which provides a significant additional source of revenue for the company.  And third, Via Varejo's marketplace seller program allows third-party vendors to display and independently sell their products on the Casas Bahia Website.  Via Varejo first engaged U.S. vendors in its marketplace seller program in 2016.

Direct Niche is a limited liability company in Minnesota whose sole business is the acquisition of Internet domain names. At the time of trial, Direct Niche's portfolio contained over 150 domain names, purchased through online auctions and sales, or through direct registration on websites like *GoDaddy.com*. Direct Niche monetizes the domain names it owns through resale, or by "parking" advertisements on the domain. "Parking" is an arrangement in which the domain name owner provides a third-party company with the exclusive right to "park" pay-per-click or other revenue-generating advertisements under the domain name. The "parking" company then pays Direct Niche a portion of the profits it generates from the advertisements. In this way, Direct Niche capitalizes on the web traffic to a particular domain. Any traffic to these domain names stems from the prior use of the domain name by a different owner, which often is, or was, a real business.

On June 15, 2015, Direct Niche registered the domain name *casasbahia.com* (the Domain) after purchasing it in an online auction. Direct Niche paid $22,850 for the Domain, the most it had ever paid for a domain name, and twenty times what it pays on average for a domain name. Direct Niche uses the Domain to generate revenue through the parking of advertisements. Traffic to the Domain occurs when individuals manually type *casasbahia.com* into their web browsers and are directed to the Domain where the parked advertisements appear. The Domain receives far more traffic than Direct Niche's other domains (over 3.5

5

million hits between June 2015 and May 2017), and at the time of trial, had generated $15,867 in revenue for Direct Niche.

In July 2015, Via Varejo filed a complaint under the Uniform Dispute Resolution Policy (UDRP) challenging Direct Niche's registration of the Domain. A panelist with the World Intellectual Property Organization (WIPO) issued an Administrative Panel Decision on October 17, 2015, ordering that the Domain be transferred to Via Varejo.  As a result, Direct Niche filed this lawsuit on November 5, 2015, seeking a declaration that its registration or use of the Domain was not unlawful under the ACPA, and requesting an injunction against the transfer of the Domain.  *See* 15 U.S.C. § 1114(2)(D)(v).[2]  Via Varejo maintains that Direct Niche is not entitled to the relief it seeks because its registration and use of the Domain did violate the ACPA, specifically, 15 U.S.C. § 1125(d)(1)(A).   Under this provision, a person is liable to the owner of a mark if he registers or uses a domain

---

[2] This section of the ACPA provides a remedy to aggrieved domain name registrants against "'overreaching trademark owners.'"  *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003) (quoting S.Rep. No. 106-140, at 11).  Specifically, this provision states:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy [such as the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.  The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).

name that is identical or confusingly similar to the mark with a bad faith intent to profit from the use. *See* 15 U.S.C. § 1125(d)(1)(A).[3]

The case proceeded to a four-day bench trial during which the district court heard from three witnesses - Michael Knight, the owner of Direct Niche, Carin Duran, the marketing manager of Via Varejo, and Othon Vela, Via Varejo's marketing director. On August 10, 2017, the district court issued findings of fact and conclusions of law in which it determined that Direct Niche's registration and use of the Domain does not comply with the ACPA. Specifically, the district court found that Via Varejo had appropriated ownership rights to the Casas Bahia mark in the United States because it used the mark in commerce to provide advertising services for others. The court further determined that the Casas Bahia mark is inherently distinctive; the Domain is identical or at least confusingly similar to the Casas Bahia mark; Direct Niche registered the domain with the bad faith intent to profit; and Direct Niche is not entitled to the statutory safe harbor defense. Based on these findings, the district court entered final judgment in favor of Via Varejo.

---

[3] The statute provides in pertinent part that:

> A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person-
> (i)     Has a bad faith intent to profit from the mark, . . . and
> (ii)    Registers, traffics in, or uses a domain name that—
>       (I)    In the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

15 U.S.C. § 1125(d)(1)(A).

Direct Niche timely appealed the district court's decision.  After filing its notice of appeal, Direct Niche filed a motion to stay enforcement of the judgment pending appeal, which this Court denied on October 18, 2017.  On appeal, Direct Niche challenges only the district court's determination that Via Varejo used the Casas Bahia service mark in the United States.  Specifically, Direct Niche maintains that the district court failed to apply the correct legal test to determine ownership of a mark, and that the district court's finding of sufficient use is not supported by the evidence.

## II.    Standard of Review

On appeal from a bench trial, "'we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error.'"  *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011) (quoting *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009)).  "In an action tried without a jury, '[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.'"  *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080 (11th Cir. 2016) (quoting Fed. R. Civ. P. 52(a)(6)).  Under this standard, "'we may reverse the district court's findings of fact if, after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been

8

committed.'"  *Crystal Entm't & Filmworks, Inc.*, 643 F.3d at 1319-20 (quoting *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005)).

## III.    Discussion

The issue on appeal is whether Via Varejo owns the Casas Bahia service mark in the United States.  Appropriation of service mark ownership rights under common law requires "'actual prior use in commerce.'"  *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)).  Direct Niche argues that to establish ownership of the mark, Via Varejo must demonstrate prior use of the mark which had "substantial effects" in the United States.  Direct Niche maintains that this "substantial effects" test is required by the Supreme Court's decision in *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280, 73 S. Ct. 252, 97 L. Ed. 319 (1952).

In *Bulova Watch*, the Supreme Court addressed the extraterritorial reach of the Lanham Act where infringing conduct occurs in a foreign country.  *See Bulova Watch*, 344 U.S. at 281 ("The issue is whether a United States District Court has jurisdiction to award relief to an American corporation against acts of trade-mark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States.");  *see also Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001).  This Court applied

9

*Bulova Watch* in *International Café* where we held that "the Lanham Act confer[s] jurisdiction over extraterritorial disputes involving trademark infringement and unfair competition when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation." *See Int'l Café, S.A.L.*, 252 F.3d at 1278. Thus, the "substantial effects" test derived from *Bulova Watch* on which Direct Niche relies concerns the jurisdiction of United States courts over trademark infringement occurring in a foreign country. This case does not involve extraterritorial infringement. Rather, the dispute here concerns whether the registration of a domain name in the United States, by a Minnesota company, is unlawful under the ACPA. The purportedly infringing activity, bad faith registration of a confusingly similar domain name, occurred in the United States, and as such, the "substantial effects" jurisdictional test for extraterritorial infringement has no application here.

Notably, Direct Niche is not invoking *Bulova Watch* as a matter of subject matter jurisdiction. Rather, Direct Niche asks us to take the jurisdictional analysis in *Bulova Watch* and apply it in the *ownership* context. However, as we previously explained in *Planetary Motion*, although both the jurisdictional and the ownership tests require analysis of a trademark's "use in commerce," the tests are nonetheless distinct. *See Planetary Motion, Inc.*, 261 F.3d at 1194-95 & n.8. To determine

10

whether a party has proved "use in commerce" sufficient to establish ownership, this Court has consistently applied the two-part test set forth in *Planetary Motion*:

> "[E]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership, even without evidence of actual sales."

*Id.* at 1195 (alteration in original) (footnotes omitted) (quoting *New England Duplicating Co., Inc. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951)); *see also FN Herstal SA*, 838 F.3d at 1081; *Crystal Entm't & Filmworks, Inc.*, 643 F.3d at 1321-22. Accordingly, Direct Niche's contention that the district court made a legal error by failing to apply the "substantial effects" test is unavailing.

To the extent Direct Niche challenges the district court's finding that Via Varejo used the mark in commerce in a manner sufficiently public to establish ownership, this is a factual determination, reviewed for clear error. *See Crystal Entm't & Filmworks, Inc.*, 643 F.3d at 1321. Use adequate to establish appropriation of service mark rights is decided on the facts of each case, upon consideration of the "totality of the circumstances." *See Planetary Motion, Inc.*, 261 F.3d at 1195; *Crystal Entm't & Filmworks*, 643 F.3d at 1321. This requires an inquiry into the "activities surrounding the prior use of the mark" to determine whether public association or notice is present. *See Planetary Motion, Inc.*, 261 F.3d at 1195. "The typical evidence of use in commerce is the sale of goods

11

bearing the mark," however, "in the absence of actual sales, advertising, publicity, and solicitation can sufficiently meet the public identification prong of the test." *See FN Herstal SA*, 838 F.3d at 1081 (citing *Planetary Motion, Inc.*, 261 F.3d at 1194-96). And, while secret or *de minimis* uses are generally inadequate, "use of a mark 'need not have gained wide public recognition'" to warrant protection. *Planetary Motion, Inc.*, 261 F.3d at 1196.

The district court found that Via Varejo used the Casas Bahia service mark in commerce in the United States. The court based its finding on evidence that Via Varejo contracts with U.S. companies to provide advertising of their goods on the Casas Bahia Website, both through preferred product placement and the banner ad program.[4] These advertising services are rendered on the Casas Bahia Website in conjunction with the Casas Bahia mark. Moreover, Via Varejo's marketing director testified to his personal knowledge that the Casas Bahia Website receives millions of visits every year from IP addresses located in the United States.[5] The

---

[4] The district court also relied on Via Varejo's marketplace seller program. However, Via Varejo did not engage U.S. vendors in its marketplace seller program until 2016, after Direct Niche first registered the Domain. As such, Direct Niche contends that the district court should not have relied on this evidence. We need not address the issue because even without consideration of the marketplace seller program, the evidence demonstrates sufficient use in commerce.

[5] Although Direct Niche argues on appeal that the district court should have struck the marketing director's testimony regarding U.S. traffic to the Casas Bahia Website, this argument is unavailing. The district court's refusal to strike this testimony was not an abuse of discretion as the witness stated that he had personal knowledge of what he was testifying about independent of any hearsay, documentary evidence that the district court determined to be inadmissible. See Huff v. DeKalb Cnty., Ga., 516 F.3d 1273, 1276 n.4 (11th Cir. 2008) ("A district court's

district court's conclusion that this evidence demonstrates sufficient public use in commerce to establish ownership of the mark is not clearly erroneous. Accordingly, we affirm.

**AFFIRMED.**

---

decision regarding striking testimony . . . is reviewed on an abuse of discretion standard."); see also 3455, LLC v. ND Props., Inc., 631 F. App'x 701, 710-11 (11th Cir. 2015).  Moreover, even if the district court erred in failing to strike certain portions of testimony where the witness was reading directly from a document that was not in evidence, such error was harmless given that the witness could and did testify as to the exact same information based on personal knowledge. See Coughlin v. Capitol Cement Co., 571 F.2d 290, 307 (5th Cir. 1978) ("The improper admission of hearsay testimony which is merely cumulative of matters shown by other admissible evidence is harmless error."); see also United States v. Langford, 647 F.3d 1309, 1323 (11th Cir. 2011) ("[E]ven if an evidentiary ruling is erroneous, 'it will not result in a reversal . . . if the error was harmless.'" (quoting United States v. Docampo, 573 F.3d 1091, 1096 (11th Cir. 2009))).