[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14010

_____

D.C. Docket No. 8:16-cv-02867-SDM-AAS

REGIONS BANK,
an Alabama Banking Corporation,

Plaintiff-Appellee,

versus

KATHRYN KAPLAN;
R1A PALMS, LLC, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 19, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

We *sua sponte* vacate our original opinion and substitute the following

opinion in its place.

Kathryn Kaplan and several companies that she and her husband, Marvin

Kaplan, own appeal the district court's judgment against them in favor of Regions

Bank. The district court ruled that three of the Kaplans' companies had

fraudulently conveyed $742,543 to Kathryn to avoid paying Regions for

preexisting debt. It also ruled that MIK Advanta LLC, another one of the Kaplans'

companies, was a legal successor of yet another Kaplan-owned company, MK

Investing, that owed Regions $1,505,145.93. We affirm.

In 2012, Regions sued Marvin and four of his companies for liability

stemming from debts that his companies owed. Regions prevailed and secured over

$7 million in judgments against the Kaplans' various companies. While the 2012

lawsuit was pending, Regions discovered that the Kaplans had completed two sets

of transactions to jettison money from their companies: first, three of the Kaplans'

companies in the 2012 lawsuit—Triple Net Exchange, BNK Smith, and R1A

Palms—wrote a series of checks to Kathryn that totaled $742,543, which she

deposited into her personal account; and second, the fourth company in the lawsuit,

MK Investing, transferred its assets to MIK Advanta LLC, a new company that

Marvin had created.

Regions filed a second complaint against the Kaplans and their companies to

recover this transferred money. As relevant to this appeal, it sought to hold

Kathryn liable for the value of the transfers to her under Florida's fraudulent

2

transfer act, Fla. Stat. Ann. § 726.101 *et seq.*, and Advanta liable for its judgment against MK Investing as a successor in liability. A bench trial ensued. The Kaplans contended that the transfers to Kathryn comprised a loan that she repaid with interest and, alternatively, that even if the transactions were fraudulent, her act of returning the money precluded Regions from recovering against her. They also disputed that Advanta was a successor to MK Investing and sought to frame the transfers to Advanta as either loans or non-fraudulent transfers.

The district court ruled in favor of Regions on both of its claims. The court determined that the evidence overwhelmingly established that the transfers to Kathryn were fraudulent conveyances, not bona fide loans. It found that the Kaplans had originally reported the transfers as "distributions" on the tax returns for Triple Net, BNK, and R1A. It was only during the 2012 lawsuit that Marvin amended the returns to re-characterize the transfers as loans. The Kaplans also could not identify any documents contemporaneous with the transfers that evidenced a loan. Finally, the district court found that Marvin's testimony was not credible. According to the district court, Marvin initially could not decide whether the transfers were loans. And after he later asserted that the transfers were loans, he "didn't know the interest rate for the loans, didn't know the maturity date for the loans, and didn't know if Kathryn repaid the loans."

3

The district court also rejected Kathryn's contention that she returned the property by transferring $794,153.22 through various sources to a trust account that paid the companies' legal fees. It first found that the Kaplans' companies owed at most $504,352.11 in legal fees, far less than the amount Kathryn purportedly repaid. Moreover, the district court explained, Marvin admitted that the excess amount of the "repayment" found its way to a different trust that "held the money for Kathryn." According to the district court, nobody offered a cogent explanation for why Kathryn paid excess money in the first place. Instead, the district court found that these "confusing and circuitous conveyances emit the unmistakable odor of fraud."

Finally, the district court ruled that Advanta was a legal successor to MK Investing. It found that Marvin owned and "managed the two companies, which both operate from Marvin's personal office and transact the same business." The district court also found that MK Investing transferred its assets to Advanta. According to the district court, "[t]he shared assets, office, management, and ownership confirm Regions' claim that [Advanta] amounts to a 'mere continuation' of [MK Investing] under a different name." Because Advanta was a successor to MK Investing, the court also entered a judgment against it for $1,505,145.93, the amount MK Investing owed to Regions.

4

Kathryn and Advanta appeal these rulings. "After a bench trial, we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011) (internal quotation marks omitted). We also "review *de novo* the application of law to those facts." *Harris v. Schonbrun*, 773 F.3d 1180, 1182 (11th Cir. 2014). "A factual finding is clearly erroneous only if we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

Kathryn challenges the district court's judgment against her for the amount she received from Triple Net, BNK, and R1A. When a debtor transfers property "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor," creditors can hold the transferee liable.  Fla. Stat. Ann. §§ 726.105(1)(a), 726.108(1)(b). Kathryn does not dispute the evidence at trial that supported the district court's finding that she and Marvin made the transfers to avoid an impending judgment against their companies. She instead contends that this evidence is "wholly irrelevant" because she "repaid" the money. We disagree.

Even if returning a fraudulent conveyance could relieve a transferee of liability—and nothing in Florida's fraudulent transfer act suggests that it could—Kathryn has not established that the district court clearly erred when it found that she did not actually repay anything. To start, Marvin testified that some of

5

Kathryn's "repayment" went to a trust that acted in her benefit, not the benefit of their companies. More importantly, the transfer does not even appear to have been entirely Kathryn's money. For example, eight days before Kathryn "repaid" more than $700,000 of the alleged loan, she received two deposits that totaled $718,455 in her account. The Kaplans never conclusively identified the source of this deposit. Kathryn first testified that the funds came from Triple Net, BNK, and R1A—that is, the very companies she purportedly repaid. She later said that the money came from a property sale but could not identify the property or the purchaser. Marvin suggested it might have come from selling an ice rink, but he could not identify the buyer. Because Kathryn has not established that she owned the money she "returned," she has not established that the district court clearly erred when it found that no repayment occurred.

The district court also did not err when it concluded that Advanta was a legal successor to MK Investing. If a corporation is a "mere continuation" of another company, the successor company is liable for the debts of the former company. *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 151 (Fla. Ct. App. 1994) (internal quotation marks omitted). Mere continuation occurs when the "purchasing corporation is merely a 'new hat' for the seller, with the same or similar entity or ownership." *Id.* at 154 (internal quotation marks omitted). "The key element of a continuation is a common identity of the officers, directors and

6

stockholders in the selling and purchasing corporation. The change is in form, but not in substance." *Id.* (citation omitted). Advanta does not contest the district court's finding that it and MK Investing shared the same office, management, ownership, and business purpose. And although Advanta purports to challenge the district court's finding that MK Investing transferred its assets to it, it admits that it received *most* of MK Investing's assets.

For all but two of the relevant transfers, Advanta protests only that the transfers were not fraudulent conveyances, which is irrelevant to continuation liability. *See id.* at 153 ("Proof of fraudulent intent is not an integral element of [successor liability]."). Advanta also does not dispute that one of the two remaining transfers—a transfer of $214,263.16 in 2012—occurred. It asserts only that MK Investing did not *directly* transfer those assets to it and instead used a series of IRA redemptions. But the presence of a middleman is also not relevant to continuation liability. Advanta also argues that the other remaining transfer between the companies—a transfer of $73,973.21 in 2015—was a loan that it repaid. But it offers no evidence for this assertion other than Marvin's testimony, which the district court discredited. So it has not shown clear error. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) ("[A] trial judge's choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." (alteration omitted) (internal quotation

7

marks omitted)). Because the district court did not clearly err when it found that Advanta took all of MK Investing's assets and that the two companies shared the same office, management, ownership, and business purpose, it did not err when it ruled that Advanta was a continuation of MK Investing. *See, e.g.*, *Serchay v. NTS Fort Lauderdale Office Joint Venture*, 707 So. 2d 958, 960 (Fla. Ct. App. 1998) (finding a "clear continuation" where the successor company had "the same assets, management, personnel, stockholders, location, equipment, and clients" as its predecessor company).

We **AFFIRM** the judgment in favor of Regions.

8