[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11748

_____

CITYPLACE RETAIL, LLC,
A Foreign Limited Liability Company,

Plaintiff-Counter
Defendant-Appellant,

*versus*

CSMC 2007-C1 SOUTH ROSEMARY, LLC,
A Florida Limited Liability Company,

Defendant,

WELLS FARGO BANK N.A.,
As Trustee For The Registered Holders Of Credit
Suisse First Boston Mortgage Securities Corp.,

Commercial Mortgage Pass-Through Certificates,
Series 2007-C1,

                                                Defendant-Counter
                                                Claimant-Appellee.

—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81689-RLR

—————————————

Before ROSENBAUM and LUCK, Circuit Judges.[*]

LUCK, Circuit Judge:

This case is about a secured loan agreement between City-Place Retail, LLC, and Wells Fargo Bank, N.A., acting as the trustee for the registered holders of the underlying note. The amount of the loan that CityPlace had to repay at maturity depended on the appraised value of the property securing the loan. In September 2018, CityPlace sent Wells Fargo notice of its intent to refinance the loan. But when Wells Fargo's servicer failed to send CityPlace written notice of the name of its appraiser, CityPlace sued, arguing

—————————————

[*] This opinion is being entered by a quorum pursuant to 28 U.S.C. section 46(d).

that Wells Fargo failed to timely appoint an appraiser. Thus, City-Place contended that, under the loan agreement, its appraisal was conclusive and binding. Following a bench trial, the district court ruled for Wells Fargo. It found that Wells Fargo properly appointed its appraiser before the appointment deadline, so City-Place's appraisal wasn't controlling. And the district court concluded that CityPlace's appraisal violated the minimum standards required by the agreement. As a remedy for the violation, the district court struck CityPlace's appraisal and ordered the parties to restart the appraisal process from scratch. After oral argument and careful review of the record and the briefs, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2007, CityPlace took out a $150 million loan secured by a twenty-acre commercial property in West Palm Beach, Florida. In 2011, CityPlace and its lender entered into a loan modification agreement, which extended the loan's maturity date to December 11, 2018. At the same time, CityPlace and its lender amended the security agreement to securitize the loan as part of a pool of commercial real estate loans for which Wells Fargo served as trustee. The amended security agreement appointed Berkadia Commercial Mortgage, LLC as the loan servicer.

### The Loan Modification Agreement

The loan modification agreement is the crux of this appeal. It allowed CityPlace to refinance the loan at maturity (December 11, 2018) on ninety days' notice of its intent to refinance. If

CityPlace refinanced, the amount it needed to repay (the so-called "[n]et [r]efinancing [p]roceeds") was determined by the appraised value of the property at the time of repayment.

Section 4.9(g) of the loan modification agreement provided a mechanism for determining the property's appraised value. To refinance, CityPlace had to give Wells Fargo written notice before the new loan would close. The agreement gave each party ten business days from receipt of the notice to "appoint" an appraiser and fifteen business days from receipt of the notice to give written notice identifying their appraisers. Once an appraiser was "appoint[ed]," the appraiser had to "deliver" its appraisal within thirty days after its "engagement." The agreement also required CityPlace to "use reasonable efforts" to provide Wells Fargo and its appraiser with any "requested information" within five business days of the request. And the agreement required appraisals to be performed "in accordance with the Uniform Standards of the Professional Appraisal Practice [(USPAP)]" and "meet the minimum appraisal standards for national banks" established by the Comptroller of the Currency under Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).

If both parties timely "appoint[ed]" appraisers and the resulting appraisals differed by more than five percent, a third appraiser would be selected to determine the final appraisal value. If either side failed to "appoint" an appraiser "within the required time period," however, the other side's appraisal would "be the only . . .

[a]ppraisal used to calculate the [n]et [r]efinancing [p]roceeds," and that appraisal would be "conclusive and binding."

## The Refinancing

On September 7, 2018, CityPlace's vice president provided written notice of CityPlace's intent to refinance the loan to Kristie Alvelo, a vice president at Berkadia, Wells Fargo's loan servicer. Berkadia acknowledged receipt, and Alvelo forwarded the notice to Berkadia's client relations manager. But the manager didn't realize the notice was a refinance notice and didn't input the notice into Berkadia's system. On September 12, CityPlace sent Wells Fargo and Berkadia notice it had appointed Cushman & Wakefield Regional, Inc. as its appraiser.

On October 5, Berkadia sent CityPlace a letter detailing the conditions for Wells Fargo's approval of the refinancing. The cover email said that once CityPlace countersigned the letter, Berkadia "will appoint" an appraiser. Then, on October 8, City-Place sent Wells Fargo a letter stating that Wells Fargo failed to appoint an appraiser within the time required by section 4.9(g)(i) of the loan modification agreement. CityPlace attached the October 5 letter that, CityPlace said, showed Wells Fargo "had not appointed" an appraiser. CityPlace explained that its position was that its appraisal would be binding "pursuant to [s]ection 4.[9](g)(iv)" of the loan modification agreement.

On October 11, Berkadia responded on Wells Fargo's behalf, "refut[ing] [CityPlace's] statement in the October 8 [l]etter that

[Wells Fargo] failed to appoint" an appraiser. The letter continued: "As you are aware from the various correspondences, interactions[,] and discussions with [Berkadia] over the course of September of 2018, [Wells Fargo] identified CBRE" as its appraiser. Berkadia explained that it "advised" CityPlace of CBRE's appointment in connection with a related tax increment financing taking place around the same time. CityPlace and Berkadia exchanged several more letters about the appraisals and Wells Fargo's selection of CBRE as its appraiser. CityPlace maintained that, under the loan modification agreement, its appraisal was "conclusive and binding" in determining the property's appraisal value.

Ultimately, the appraisals from Wells Fargo and CityPlace's appraisers differed by more than five percent—Cushman, CityPlace's appraiser, valued the property at $120 million, and CBRE, Wells Fargo's appraiser, valued it at $155 million—which would've triggered the loan modification agreement's requirement to appoint a third appraiser. Under the "waterfall" formula for net refinancing proceeds described in section 4.9(c) of the agreement, if CityPlace's $120 million appraisal controlled, then CityPlace would've owed nothing. But, if Wells Fargo's $155 million appraisal controlled, then CityPlace would've owed $10.3 million.

The discrepancy in the two appraisals partly related to a rezoning. In November 2018, after CityPlace had delivered its appraisal, West Palm Beach approved a rezoning that would allow a twenty-one story, mixed-use, multi-family apartment tower on a portion of the property. Although CityPlace knew the rezoning

had been pending, CityPlace never told Cushman about it or otherwise shared CityPlace's development plans for the property. Because Cushman was unaware of the imminent rezoning, it noted that, as of its appraisal, there were "[n]o" "[z]oning [c]hange[s] [p]ending" for the property. Wells Fargo's appraiser, however, considered the rezoning in its appraisal, which raised the value of the property.

### The Lawsuit

CityPlace sued Wells Fargo[1] for specific performance and injunctive relief, seeking a court order declaring that, under the loan modification agreement, Cushman's appraisal must be used to determine the property's value (and the corresponding amount that CityPlace had to repay). Wells Fargo answered and counterclaimed for a declaration that it had complied with the loan modification agreement, that CityPlace's appraisal was "invalid" because CityPlace "concealed" information about the rezoning from its appraiser, and that CityPlace must restart the appraisal process by having Cushman prepare a new appraisal that considered the rezoning.

The district court entered an agreed order allowing City-Place to proceed with the refinancing while the litigation

---

[1] CityPlace technically sued CSMC 2007-C1 South Rosemary LLC, the loan originator. But, when Wells Fargo removed the case to federal court, it explained that CSMC was an improper party because CSMC assigned its rights in the loan to Wells Fargo in 2012. CSMC was dismissed as misjoined.

8                    Opinion of the Court                    20-11748

proceeded.  The order had Related Companies, L.P., an entity af-filiated with CityPlace, guarantee CityPlace's loan obligations.

*Judgment for Wells Fargo*

After a nine-day bench trial, the district court denied City-Place's declaratory relief claim, dismissed its remaining claims with prejudice, and entered judgment for Well Fargo.  First, it found that CityPlace's appraisal wasn't conclusive and binding because Wells Fargo had appointed its appraiser within the required time period.  The district court found that Wells Fargo had appointed CBRE as its "appraiser for the [p]roperty for all purposes" prior to receiving CityPlace's notice of intent to refinance, so, when the no-tice was received, CBRE had "already been engaged."  Second, the district court concluded that CityPlace breached the loan modifica-tion agreement's provision requiring that appraisals comply with FIRREA and USPAP because CityPlace's appraisal didn't consider the pending rezoning.[2]  As a remedy for violating the agreement, the district court struck CityPlace's appraisal and directed the par-ties to restart the appraisal process with new appraisals that consid-ered the rezoning and used "an effective date" between September

---

[2] The district court also entered judgment for Wells Fargo because CityPlace's claim would result in a disproportionate, substantial forfeiture, and CityPlace violated its duty under the agreement to cooperate with Wells Fargo's ap-praiser.

20-11748                 Opinion of the Court                 9

7, 2018 (the date the refinance notice was given), and December 11, 2018 (the refinancing closing date).  CityPlace timely appealed.[3]

## STANDARD OF REVIEW

Three standards of review apply to this appeal.  First, we review the district court's findings of fact, including determinations of the credibility of witnesses and weight of the evidence, for clear error.  *Sidman v. Travelers Cas. & Sur.*, 841 F.3d 1197, 1201 (11th Cir. 2016) ("[C]redibility of a witness is in the province of the fact-finder and this court will not ordinarily review the factfinder's determination of credibility.").  That means the district court's findings of fact must not be disturbed so long as they are supported by substantial evidence.  *Id.*  Second, we review the district court's conclusions of law de novo.  *Id.*  Third, we review the district court's choice of an equitable remedy for an abuse of discretion.

---

[3] After oral argument, we remained uncertain whether we had subject matter jurisdiction, so we remanded to the district court "for the limited purpose of making findings about (a) the identity and citizenship of CityPlace's members, and (b) whether Wells Fargo, as trustee, is the real party in interest."  *See Underwriters at Lloyd's v. Osting-Schwinn*, 613 F.3d 1079, 1093 (11th Cir. 2010) (remanding to the district court to determine the parties' citizenships).  On remand, the district court concluded that:  (1) Wells Fargo, as trustee, is the real party in interest; (2) Wells Fargo is a citizen of South Dakota; (3) CityPlace is a citizen of California, Connecticut, Delaware, Florida, Massachusetts, New Hampshire, New Jersey, New York, Texas, and the nations of Austria, the British Virgin Islands, and Kuwait; and (4) "[t]here is no overlap in citizenship" between Wells Fargo and CityPlace so "diversity jurisdiction is proper."  We are now satisfied that we have subject matter jurisdiction.

*See Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1343 (11th Cir. 2008).

## DISCUSSION

We break our discussion into three parts.  First, we discuss whether CityPlace's appraisal was conclusive and binding under section 4.9(g)(iv) of the loan modification agreement.  Next, we consider whether CityPlace's appraisal violated section 4.9(g)(v)'s requirement that appraisals comply with FIRREA and USPAP.  Finally, we review the district court's remedy striking CityPlace's appraisal and requiring that the appraisal process begin anew with appraisals that consider the rezoning.

### *CityPlace's Appraisal Was Not "Conclusive and Binding"*

Section 4.9(g)(i) of the loan modification agreement provided that Wells Fargo "shall appoint a [q]ualified [a]ppraiser" "[w]ithin ten (10) [b]usiness [d]ays after [Wells Fargo]'s receipt of [CityPlace]'s written notice of an intended [r]efinance."  It also required "[e]ach party" to "notify the other of the identity of its [q]ualified [a]ppraiser so engaged within fifteen (15) [b]usiness [d]ays after receipt of the notice regarding the intended [r]efinance."  Wells Fargo received CityPlace's notice on September 7, 2018, so it needed to appoint an appraiser by September 21 and give CityPlace notice of its appointed appraiser by September 28.

If either side didn't "appoint" an appraiser "within the required time period," section 4.9(g)(iv) of the agreement made the

other side's appraisal "conclusive and binding." So, if Wells Fargo failed to timely appoint an appraiser, then CityPlace's appraisal would "be the only . . . [a]ppraisal used to calculate the [n]et [r]efinancing [p]roceeds." Specifically, if Wells Fargo didn't appoint CBRE by September 21, 2018, then CityPlace's appraisal—valuing the property at $120 million—controlled, and CityPlace owed nothing. The question for us, then, is whether the district court's finding that Wells Fargo "appointed" CBRE as its appraiser "for all purposes" before September 21, 2018, was clearly erroneous.

It wasn't. At trial, Alvelo explained that Berkadia "often engage[d] CBRE." She testified that Stuart Lieberman, the CBRE appraiser, had been appraising the CityPlace property for Berkadia "since 2016" and that Berkadia "typically" engaged the "same appraiser" for a given property. For that reason, she explained, Lieberman "was [Berkadia's] appraiser of choice that [it] used to prepare the appraisal," and there was no other appraiser considered for the CityPlace property.

When asked if Berkadia had decided "who the appraiser would be in connection with the refinance" after it received CityPlace's refinance notice, Alvelo answered, "At that point, Mr. Lieberman was already engaged and working." Alvelo explained that, when the refinance notice "came in," Lieberman was working to "provide an update" to his appraisal "for the purpose of the refinance." And she testified that she "made th[e] decision" to

hire CBRE as Wells Fargo's appraiser in "August of 2018."[4]   So, when Berkadia received the letter from CityPlace on October 9, 2018, asserting Wells Fargo had failed to appoint an appraiser, Berkadia (acting on Wells Fargo's behalf) had already "decided who would do the updated report"—"Lieberman from CBRE."

Alvelo's account mirrored Lieberman's testimony and sworn statement.  When Lieberman was asked if he was "the only person who prepared appraisals on the CityPlace property," he said, "Yes."  Lieberman testified that he viewed himself as "having been designated Berkadia's appraiser for any valuation that Berkadia need[ed] or desire[d] . . . for the property."  And Lieberman testified that he'd made multiple prior appraisals of the CityPlace property in connection with the loan, along with an ongoing tax increment financing appraisal.

In short, under section 4.9(g)(iv) of the loan modification agreement, an appraisal was "conclusive and binding" only if the other party failed to timely "appoint" an appraiser.  Because substantial evidence supported the district court's finding that Wells

---

[4] CityPlace characterizes this testimony as "self-serving" and asks us to discredit it.  But assessing "[t]he credibility of a witness is in the province of the factfinder," and we "will not ordinarily review a factfinder's determination of credibility." *Sidman*, 841 F.3d at 1201.  Because we "must give due regard to the trial court's opportunity to judge the witnesses' credibility," Fed. R. Civ. P. 52(a)(6), we generally will not second-guess the district court's determinations of the witnesses' credibility on clear error review.

Fargo's appraiser was timely appointed, we agree that CityPlace's appraisal wasn't conclusive and binding.

CityPlace has three main arguments for why its appraisal was conclusive and binding, but we are not convinced. First, City-Place points to other, contrary evidence in the record that shows Lieberman wasn't timely appointed. The evidence CityPlace points to includes Berkadia's October 5, 2018 email and Berkadia's failure to sign an engagement letter until after the appointment deadline. But it wasn't clearly erroneous for the district court to credit Alvelo and Lieberman's consistent testimony over the contrary evidence that CityPlace relies on. "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Taylor v. Hudson Pulp & Paper Corp.*, 788 F.2d 1455, 1462 (11th Cir. 1986).

Second, CityPlace contends that, because Wells Fargo didn't give notice of its appointed appraiser within fifteen business days of the refinance notice, CityPlace had no duty to cooperate with Wells Fargo's appraisal, and CityPlace's appraisal controlled. We disagree. The loan modification agreement didn't say that the failure to give timely *notice* rendered CityPlace's appraisal "conclusive and binding." Rather, it said only that the failure to timely *appoint* an appraiser made an appraisal "conclusive and binding," and the district court found—and substantial evidence supports—that Wells Fargo timely appointed its appraiser. Likewise, the loan modification agreement required CityPlace to cooperate with Wells Fargo's appraiser irrespective of Wells Fargo's compliance

with the notice deadline.  Section 4.9(g)(ii) said that, so long as Wells Fargo "timely *appoint[ed]*" its appraiser, CityPlace had to "use reasonable efforts to respond" to requests for information "within five (5) [b]usiness [d]ays following receipt of such request[s]."  This provision didn't say that CityPlace's duty to cooperate turned on the receipt of a *notice* of appraiser appointment—it just required CityPlace to cooperate if an appraiser had in fact been appointed.

Third, CityPlace argues that CBRE's appraisal should be disregarded because it was "delivered" late.  Section 4.9(g)(ii) of the agreement did provide that each appraiser "shall . . . deliver" its appraisal "within thirty (30) days after its engagement."  But nothing in the agreement disqualified an appraisal if it wasn't delivered by that deadline.  Section 4.9(g)(iv) said only that CityPlace's appraisal would control if Wells Fargo didn't "appoint" an appraiser "within the required time period."  Moreover, the district court found that CityPlace's contractual breach substantially contributed to the delayed delivery of Wells Fargo's appraisal.  Substantial evidence supported this finding.  For example, when CBRE asked CityPlace for information to complete its appraisal, CityPlace slow-walked CBRE's requests, ignoring the agreement's five-day response deadline.

Because the district court's finding that Wells Fargo appointed an appraiser by September 21, 2018, was not clearly erroneous, the district court properly ruled that CityPlace's appraisal was not "conclusive and binding" under section 4.9(g)(iv).

*CityPlace's Appraisal Violated the Agreement by Not Complying with the Applicable Professional Standards*

The district court also concluded that CityPlace's appraisal breached section 4.9(g)(v) of the loan modification agreement because it "did not consider the zoning modification sought by City-Place." The district court found that CityPlace's appraiser didn't consider the pending rezoning because CityPlace intentionally didn't tell him about it, which led to a violation of the agreement's requirement that appraisals adhere to specific professional standards.

Section 4.9(g)(v) of the loan modification agreement provided the requirements for an appraisal:

> [A]n appraisal of the [p]roperty [shall be] performed in accordance with the Uniform Standards of the Professional Appraisal Practice by a member of the Appraisal Institute selected by [Wells Fargo] or [City-Place] (or appointed pursuant to this [s]ection), as applicable, which appraisal shall meet the minimum appraisal standards for national banks promulgated by the Comptroller of the Currency pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended (FIRREA).

Put simply, this provision required that appraisals comply with two standards: FIRREA and USPAP.

The FIRREA standards advise that appraisers "should consider the real property's . . . zoning as of the effective date of the

appraiser's opinion of value." Interagency Appraisal and Evaluation Guidelines, 75 Fed. Reg. 77,450, 77,459 (Dec. 10, 2010). The standards also direct appraisers to consider "market factors that affect [the property's] market value" but caution against basing their evaluation on "*unsupported* assumptions, such as . . . the zoning will change." *Id.* at 77,461 (emphasis added). Importantly, the FIRREA standards don't direct appraisers to ignore *supported* assumptions, including very-likely-to-happen zoning changes that would dramatically affect the property's value. That's because an imminent and likely rezoning will affect a property's value at the time of appraisal. It's not speculative to ascribe present value to a pending rezoning which, for example, would upend the most valuable use of the property.[5]

In fact, USPAP standards rule 1-3 requires appraisers to consider "*reasonably probable modifications* of . . . land use regulations." The district court correctly found that this rule required consideration of the imminent CityPlace property rezoning because it was a "reasonably probable modification of [the] land use regulations."

The trial evidence showed that CityPlace knew the rezoning was "reasonably probable." CityPlace worked with and met city

---

[5] CityPlace's appraisal expert conceded this, testifying that "[i]f you have current data that supports the fact that buyers are paying a premium *before* something occurs, that is—you are now taking the speculation away, you are not basing the value on a future [event], you are basing the value on existing comparable data, current data."

planning staff in August and September 2018 (while the property was being appraised), and internal CityPlace emails showed it knew: (1) the city would vote on the rezoning shortly; and (2) preliminary proceedings were going "favorabl[y]." The rezoning was going so favorably that ten days before CityPlace's appraiser, Cushman, finished its appraisal, the city's housing and community development department told CityPlace it was "recommend[ing]" that the rezoning be approved. And CityPlace disclosed the plans for the apartment tower to its refinancing lender, suggesting that CityPlace expected the rezoning to occur.[6] Nevertheless, CityPlace never told Cushman about this likely rezoning. So when Cushman submitted its appraisal on October 12, 2018, it didn't indicate that any rezoning was pending.

Given these facts, we agree with the district court that under USPAP standards rule 1-3 the rezoning was a "reasonably probable modification[]" of the property's "land use regulations" that should've been considered in any appraisal. Because CityPlace failed to inform Cushman of the rezoning, its appraisal violated the standards, breaching section 4.9(g)(v) of the agreement.

_____

[6] The refinancing lender required an appraised value "over $135[] [million] for [CityPlace] to get [the] full proceeds" of the new loan, so CityPlace was motivated to seek a higher appraisal value than Cushman's $120 million appraisal. The refinancing lender hired a third appraiser, and CityPlace readily provided him information about the redevelopment plans—information withheld from Cushman. The third appraiser's draft appraisal valued the property at $163.6 million, more than the CBRE and Cushman appraisals.

CityPlace makes two arguments for why its appraisal complied with section 4.9(g)(v), but we're unpersuaded. First, CityPlace argues that USPAP standards rule 1-3 didn't apply because it wasn't identified as a standard "that must be followed in a FIRREA appraisal." To be sure, CityPlace's appraisal expert testified that "FIRREA controls" over USPAP. But Wells Fargo's appraisal expert, whom the district court found "more credible," testified from his experience that compliance with USPAP standards rule 1-3 is "necessary for credible results resulting in a market value opinion." A FIRREA appraisal, Wells Fargo's expert explained, is "a market value opinion," so it's "mandatory" that FIRREA appraisals consider "reasonably probable" rezonings. If there is a reasonably probable "modification of a change of land use," the expert testified, then an appraiser must "factor that in." The district court was entitled to credit and rely on Wells Fargo's expert to conclude that CityPlace's appraisal should've considered the reasonably probable rezoning.[7] *See Sidman*, 841 F.3d at 1201.

Second, CityPlace argues that, "[e]ven if" its appraiser should have considered the pending zoning change, the error didn't "significantly affect" the appraisal's final valuation. But the failure to even *consider* the reasonably probable rezoning meant

---

[7] CityPlace argues that the district court erred by relying on expert testimony to interpret and apply professional appraisal standards. But we often rely on experts to share their experience and understanding of how professional standards work in practice. *See, e.g.*, *Mandel v. Doe*, 888 F.2d 783, 790 (11th Cir. 1989) (relying on expert testimony to apply professional medical standards).

CityPlace's appraisal violated the applicable professional standards. As the district court explained, CityPlace's appraisal didn't have to ultimately "assign value to the zoning change." Rather, CityPlace's appraisal only had to *consider* the pending rezoning and, "due to CityPlace's withholding of information," its appraiser "did not consider what [it] was required to consider."

Because CityPlace's appraisal didn't consider the reasonably probable zoning change, the district court didn't err in concluding the appraisal violated the applicable professional standards, breaching the loan modification agreement.

## The District Court's Remedy Was Not an Abuse of Discretion

To remedy the violation of the loan modification agreement, the district court struck CityPlace's appraisal and ordered CityPlace and Wells Fargo to restart the appraisal process and obtain new appraisals with an effective date between September 7, 2018 (when the refinance notice was given), and December 11, 2018 (the maturity date). CityPlace argues that the district court instead should've ordered it to obtain "a new FIRREA-compliant appraisal," rather than having both parties "redo the entire appraisal process."

But the district court's remedy wasn't an abuse of discretion. *See Wilshire*, 531 F.3d at 1343. Under New York law,[8] the district court was entitled to fashion an equitable remedy to place the

---

[8] The parties agree New York law applies.

parties in the position they would've been in had the contract been fully performed. *See Lirosi v. Elkins*, 453 N.Y.S.2d 718, 723 (N.Y. App. Div. 1982) ("[A] court of equity is not precluded from fashioning a suitable remedy . . . ."). The loan modification agreement didn't specifically provide a remedy if one of the appraisals didn't meet the FIRREA and USPAP standards. And Wells Fargo was entitled to the opportunity to resubmit an appraisal because the district court found that it timely appointed its appraiser. The district court's remedy—restarting the appraisal process—was appropriate because it gave both sides the opportunity to procure FIRREA- and USPAP-compliant appraisals under the loan modification agreement's terms.

CityPlace argues that, "even if the entire process were to be redone," the new appraisals must be dated "no later than October 24, 2018"—before the rezoning was approved. But, even if we agreed (we don't), appraisals dated between September 7, 2018, and October 24, 2018, would still have to consider the then-reasonably-probable rezoning. In any event, we disagree with CityPlace's October 24, 2018 cutoff. The agreement doesn't say that an appraisal needed to be "as of" October 24, 2018, or any other date. It required only that the appraisals be "deliver[ed]" within thirty days after an appraiser's engagement and "as of a date *not earlier than sixty (60) days prior* to the closing of" the refinancing. An appraisal dated "as of" December 11, 2018, isn't "earlier than sixty (60) days prior to the closing of" the refinancing. So, the district court's

remedy didn't award Wells Fargo any greater rights than what it bargained for.

## CONCLUSION

The district court didn't reversibly err in finding that City-Place's appraisal was not conclusive and binding, finding City-Place's appraisal violated the agreement by not complying with the applicable professional standards, and requiring the parties to obtain new appraisals with an effective date between September 7, 2018, and December 11, 2018.

**AFFIRMED.**